Exhibit A

## PHYSICIAN EMPLOYMENT AGREEMENT

THIS AGREEMENT is made this 3rd day of January 2019, by and between Froedtert South, Inc., a Wisconsin non-stock, not-for-profit corporation located at 6308 Eighth Avenue, Kenosha, Wisconsin, 53143 ("System") and Christopher D. Stone, M.D. ("Physician").

### RECITALS

WHEREAS, the System operates two (2) acute care medical/surgical hospitals in Kenosha and Pleasant Prairie, Wisconsin; and

WHEREAS, the System has established and operates the Froedtert South Medical Group ("FSMG") of the System (the "Clinic") in which physicians provide services as employees of the System; and

WHEREAS, the System and its medical staff have approved this employment relationship as being in the interest of the public as prescribed by Wisconsin Statutes 448.08(5); and

WHEREAS, the Physician specializing in Cardiovascular Thoracic Surgery is licensed to practice medicine in Wisconsin, and is seeking employment with the System under the terms and conditions stated in this Agreement.

NOW, THEREFORE, in consideration of the premises and the promises and covenants contained herein, the parties agree as follows:

1. **EMPLOYMENT.**

    1.1) Offer and Acceptance. The System hereby employs the Physician and the Physician hereby accepts employment, subject to and in accordance with the terms and conditions of this Agreement.

    1.2) Terms of Employment. The Physician's term of employment shall commence on April 15, 2019, or sooner, if permitted by Physician's current employer, and if none of the provisions for termination specified in Section 6 of this Agreement have occurred, shall end on April 14, 2024, unless extended.

    1.3) Physician's Duties. The System hires the Physician as a Cardiovascular Thoracic Surgeon, duly licensed to practice medicine in the State of Wisconsin, whose principal duties are to provide physician medical care services in a high quality and cost-effective manner to patients of the System and the Froedtert South Medical Group, together with any duties incidental to the Physician's principal duties as assigned by System.

    The Physician agrees to establish full-time office hours, including coverage schedules for weekends, evenings, nights and holidays, with such office hours and schedules being subject to final approval and periodic review by the President & CEO. Physician shall work the number of weeks in a year, number of days in a week, not less than four (4) days per week in clinic, and the number of hours in a day

1

TK  CS

reasonably predicted to substantiate the Physician's base pay as illustrated in Section 3. System and Physician acknowledge that the number of days in clinic may be mutually modified once Physician's scheduled surgical cases necessitate less time in the clinic setting and more time in the Operating Room.

The Physician further agrees to work a minimum of Two Hundred Sixty (260) days of Emergency Department and Cardiothoracic Surgery Coverage (Unattended City Call) responsibilities for the Cardiovascular Thoracic Surgery program per Agreement year, with such schedule being subject to final approval and periodic review by the President & CEO. Physician further acknowledges, and agrees, there may be times, during the term of this Agreement, when he may be required to work more than the minimum number of Emergency Department and Specialty Coverage days per Agreement year, if necessary.

System and Physician acknowledge that building a successful practice requires more than mere work effort. It requires the Physician to grow, develop, and sustain a flourishing patient base. To build a flourishing patient base, Physician acknowledges the importance of establishing a strong referral network throughout Southeast Wisconsin and Northern Illinois.

Physician acknowledges that he must work diligently with referring physicians and mid-level providers to foster strong professional relationships. Physician shall work tirelessly to meet, and interact with, referring physicians and mid-level providers, on a routine and on-going basis, to develop and nurture strong referral relationships.

Physician shall also assure his relationships with referring physicians reflect the System's commitment to exceptional customer service. Physician recognizes thorough and timely feedback, provided both verbally and in writing, to referring physicians is essential to enhance the quality of patient care and to strengthen Physician's professional relationship with those referrers.

Physician shall work to develop a strong community engagement to educate the community about Physician's practice. Physician will work with System to provide services including, but not limited to, community education programs and employer-sponsored work-site education programs, featured speaking engagements, and will provide input and feedback on marketing activities intended to promote Physician's practice.

1.4) Consent for Outside Services. Physician shall not engage in any other medical business or medical practice activity, regardless of whether such activity is pursued for pecuniary advantage, without the System's prior written consent. All fees collected by Physician or in Physician's name shall accrue to the System except as otherwise set forth in the President & CEO's written consent. It is understood by the Parties that Physician occasionally performs medical malpractice chart review, depositions, testimony, perfusion services, and locum tenens services, which will be performed outside of normal working hours and all revenue collected for these services shall be retained by Physician. Notwithstanding the above, Physician shall not be restricted in engaging in outside non-medical business.

2

_TK_ _CS_
TK   CS

2. **OBLIGATIONS OF PHYSICIAN.**

   2.1) Standards of Performance. The Physician shall provide the services specified in Section 1 of this Agreement within the limits of his training and experience and at a generally recognized professional level of quality.

   2.2) Licensure and Memberships.

   2.2.1) State Licensure. The Physician shall be, during the term of this Agreement, duly licensed by the State of Wisconsin to practice medicine without restriction. Physician agrees that continued unrestricted licensure is a condition of employment. The Physician will provide current proof of licensure upon the System's request. Physician shall be, at all times under this Agreement, Board Certified in Surgery and Thoracic Surgery.

   2.2.2) DEA Registration. The Physician shall obtain, on or before the commencement of the initial term of this Agreement, and shall continue to maintain registration with the Drug Enforcement Administration ("DEA"), if applicable, without any limitation on his authority to prescribe drugs under such registration. Physician agrees that continued unrestricted DEA registration is a condition of his continued employment. The Physician shall provide current proof of DEA registration upon the System's request.

   2.2.3) Medical Staff Membership. As a condition of employment, the Physician must maintain medical staff membership at the System and must maintain clinical privileges at the System as may be necessary for Physician's practice.

   2.2.4) Medicare and Medicaid Certification. Physician shall be and remain eligible for reimbursement from the Medicare/Medicaid programs, shall accept and treat Medicare and Medicaid patients, and shall immediately notify the System in the event he is, for any period of time, excluded from, or is in any way sanctioned by either program. Physician shall also notify the System within five (5) days of the receipt of an initial sanction notice, notice of proposed sanction or of the commencement of a formal investigation, or the filing of charges, by a Medicare peer review organization (including but not limited to WIPRO), the Department of Health and Human Services, or any law enforcement agency or health regulatory agency of the United States or the State of Wisconsin.

   Notwithstanding the above, the Parties are aware of an investigation resulting from a lawsuit filed by Dr. Robert Love against Froedtert Health, the Medical College of Wisconsin and other parties.

   2.2.5) Professional Liability Insurance. The Physician shall cooperate with the System in all respects so as to allow the System to maintain

3

TK    CS

professional liability insurance on behalf of the Physician, whether the insurance is individual or group insurance, which meets the requirements of Wisconsin Statutes 655.23 and to allow the System to maintain Physician's participation in the Wisconsin Injured Patients and Families Compensation Fund. The Physician shall notify the System immediately upon the cancellation or limitation for any reason of the insurance required under this section. The System shall be responsible for the purchase of "tail" coverage for all periods of time and for all services provided by Physician during his employment with the System.

2.2.6) HMO/PPO/IPA Memberships. As a condition of employment, the Physician must apply for, and use his best efforts to obtain and maintain membership in, such health maintenance organizations, preferred provider organizations, individual practice associations and other managed care arrangements as the System may, from time to time, designate. Further, the Physician may, subject to the President & CEO's prior approval (which approval shall be withheld or given in the President & CEO's sole discretion), apply for, obtain and maintain memberships in other health maintenance organizations, preferred provider organizations and independent physician associations.

2.2.7) Optional Memberships. The Physician may, subject to the President & CEO's prior approval (which shall not be unreasonably withheld), apply for, obtain and maintain memberships in other professional and specialty organizations, such as state and local medical societies and other than those under Section 2.2.6.

2.3) Physician Conduct. The Physician will at all times during his employment by the System: (1) observe and conform to all laws and ethical directives of the medical profession; (2) comply with all of the System's employment policies that are applicable to physician employees; (3) comply with all of the reasonable directives and orders of the System's Board of Directors and the System's President & CEO; and (4) not use or disclose, except at the System's direction, any professional secrets, confidential information or trade secrets of or relating to the System or any patients of the System, except that patient information may be disclosed in accord with the provisions of Chapter 146 of the Wisconsin Statutes and Section 2.4 of this Agreement. Physician also acknowledges that he has been informed of the Mission, Vision and Values of the System and agrees that in the performance of all of his obligations under the terms of this Agreement he shall, at all times, conduct himself in a manner which is consistent with the said Mission, Vision and Values.

2.4) Confidentiality. The Physician recognizes that all patient information, records and business information and records are the property of the System and that, during and after the term of his employment, the Physician will not use or reproduce such information or records except for the purpose of fulfilling the Physician's obligations under this Agreement or as otherwise directed by the System. The Physician shall have no rights to such information or records or to copies thereof except as may be

4

TK  CS

required by law or by contract, or to defend himself in a malpractice action or an insurance or third-party payor audit.

2.5) Records and Reports.

    2.5.1) Medical Reports. Physician shall prepare or cause to be prepared promptly reports of all examinations, procedures and other services performed, in accordance with the policies, rules and regulations of the System and the medical staff of the System pertaining to medical records, and in addition thereto shall reflect the services provided, the instructions given to the patient and such other information as System shall from time to time require. The reports shall be filed promptly with the medical records administrator of the System and attending or treating physician.

    2.5.2) Time Records. Physician shall prepare and maintain records and reports in accord with System procedures for physician time records and reports. Additionally, the Medicare program requires physician time records or other information sufficient to accurately allocate physician compensation costs between services to the System (Part A services), services to individual patients (Part B services) and services that are not subject to reimbursement. The Physician agrees to maintain such records as are required by Medicare regulations and the Medicare intermediary.

    2.5.3) Other Reports. Physician shall prepare and file such additional or supplementary reports as System may reasonably request and, upon the request of System, shall analyze and interpret such reports as necessary from time to time.

    2.5.4) Ownership. The ownership and right of control of all reports, records and supporting documents prepared in connection with the services of the Physician hereunder shall belong exclusively to the System. It is understood that the contents of such documents are confidential and disclosure shall be made only in accordance with the System's policies.

2.6) Quality Assurance. Physician shall be subject to the quality assurance and/or peer review policies and procedures of the System's medical staff as set forth in its Medical Staff Bylaws. In addition, Physician shall abide by all policies and directions of the System regarding provision of services except that, to the extent prohibited by Wisconsin Statute 448.08(5)(a)(2), the System shall not supervise or interfere with the Physician's exercise of his professional judgment.

2.7) Use of Premises. Physician covenants not to use, or knowingly permit any person acting within the System to use, any part of the premises of System for any purpose other than the performance of services for the System and its patients all to be consistent with the philosophy of the System.

5

TK    CS

2.8) OSHA Compliance. The Physician agrees to comply with all applicable Occupational Safety and Health Administration ("OSHA") regulations and standards, including, but not limited to, rules pertaining to bloodborne pathogens, and will fully cooperate with System in enforcing such standards and regulations for all services performed on System premises. The Physician shall participate in all System training programs relating to bloodborne pathogens.

2.9) System Resources. As and to the extent permitted by law, Physician shall make all of his referrals for all health care services (including without limitation physician services, hospital services and laboratory services) to entities owned or controlled by System, provided, however, Physician shall not be obligated to make a referral to a System provider if: (i) the patient expresses a preference for a different provider, practitioner or supplier; (ii) the patient's insurer determines the provider, practitioner or supplier which is other than a System provider; or (iii) Physician certifies in writing that, in Physician's judgment, a referral to a System provider is not in the patient's best medical interests.

3. **COMPENSATION.**

   3.1) Base Annual Salary. System will compensate Physician, for services, a Base Annual Salary of One Million Dollars ($1,000,000) in each year of this five (5) year Agreement. System and Physician agree that Physician's Base Annual Salary has been set at a fair-market value that assumes a minimum threshold of Fifteen Thousand (15,000) Work Relative Value Units ("wRVUs") to be performed by the Physician per Agreement year.

   3.2) Sign-On Bonus. System will pay Physician Fifty Thousand Dollars ($50,000) as a Sign-on bonus. The entire amount of the Fifty Thousand Dollar ($50,000) Sign-on Bonus shall be paid to Physician within the first full payroll period following commencement of employment. All required taxes will be withheld from this Sign-on Bonus.

   3.3) Moving Allowance. System will reimburse Physician up to Twenty Thousand Dollars ($20,000) as a Moving Allowance for moving and relocation related expenses. Physician shall be responsible for providing System with receipts for his moving and relocation related expenses, at which time System shall reimburse Physician up to a maximum of Twenty Thousand Dollars ($20,000).

   3.4) Administrative Compensation. The Physician shall also serve as the Medical Director of the Michael E. DeBakey Heart Institute of Wisconsin for the System. As the Medical Director of the Michael E. DeBakey Heart Institute of Wisconsin, Physician shall be responsible for the delivery of patient care and outcomes for the Michael E. DeBakey Heart Institute of Wisconsin program and facility. In the overall medical direction and management of patient care/services provided by the Michael E. DeBakey Heart Institute of Wisconsin, Physician shall be eligible for additional Compensation, in addition to Physician's Base Annual Salary as defined in Section 3.1 above, related to Administrative work performed by Physician as determined by the President & CEO in advance of each Agreement year. The Administrative work to be performed by Physician shall be defined within Exhibit B, attached hereto and

incorporated herein. The Administrative work shall be reviewed and modified by the President & CEO on an annual basis and Exhibit B shall be amended consistent with any changes to the Administrative work. System shall compensate Physician, for administrative services performed, Administrative Compensation of One Hundred Thousand Dollars ($100,000) per Agreement year, in Agreement years one (1) and two (2). System shall compensate Physician, for administrative services performed, Administrative Compensation of up to One Hundred Thousand Dollars ($100,000) per Agreement year in Agreement years three (3), four (4) and five (5). Subsequent to the end of Agreement year two, the President & CEO shall determine Physician's Administrative Compensation of up to One Hundred Thousand Dollars ($100,000) for Agreement year three; subsequent to the end of Agreement year three, the President & CEO shall determine Physician's Administrative Compensation of up to One Hundred Thousand Dollars ($100,000) for Agreement year four; and subsequent to end of Agreement year four, the President & CEO shall determine Physician's Administrative Compensation of up to One Hundred Thousand Dollars ($100,000) for Agreement year five.

3.5) Withholding. The System shall deduct and withhold from the Physician's Base Annual Salary, bonuses and Incentive Compensation, all necessary employment and income taxes and any other sums required to be withheld by law from the Physician's compensation.

3.6) Fringe Benefits. As additional compensation for services to be performed pursuant to this Agreement, Physician shall be provided with the benefits generally available to all System employees. These benefits are listed on Exhibit A, attached hereto and incorporated herein. Physician understands that System, from time to time, modifies its benefit plans, and Physician agrees to accept these modifications. In addition to those benefits listed on Exhibit A, the Physician shall be entitled, during the term of this Agreement with a System based paging and answering service.

4. **OBLIGATIONS OF SYSTEM.**

    4.1) Office Facilities, Supplies and Support Services. The System will supply or cause to be supplied office facilities, equipment, supplies, support services, utilities, non-physician personnel and such other assistance as the System deems necessary to enable the Physician to discharge his responsibilities under this Agreement. Physician understands that System operates two (2) hospitals and that System may require the services of Physician at either hospital.

    4.2) Compensation. The System will pay the Physician in accord with the provisions of Section 3.

    4.3) Management and Administration of Practice. The System shall provide all reasonably necessary managerial, administrative and related services for the operation of the practice and all services as are reasonably necessary to allow the Physician to fulfill his obligations under this Agreement. It is understood by the Parties that System shall make all reasonable efforts to recruit Ann Wendorf and Jan Jurik as employees of System.

7

TK  CS

## 5. BILLING AND COLLECTION.

5.1) <u>System Billing and Collection.</u> The System shall perform appropriate billing and collection functions for all services furnished by the Physician pursuant to this Agreement. All receivables, payments and collections generated or resulting from services rendered by the Physician are and will remain the sole and exclusive property of the System. The Physician acknowledges the System's right and power to endorse, cash, deposit or withdraw any and all notes, checks, cash, drafts, money orders or other commercial paper of any kind whatsoever which are advanced in payment or received in collection or settlement of any and all receivables under whatever terms or circumstances (including, without limitation, as a result of any legal action brought by the System) which the System deems appropriate, and regardless of whether or not the Physician's personal name appears on any such instrument or related documents. All patients seen by the Physician during his employment by the System will be invoiced as patients of the System, which may list the Physician as the individual provider.

5.2) <u>Physician Assistance.</u> Physician shall take all steps reasonably requested by System to assist in the billing and collection of funds due for all services furnished to patients in the System.

5.3) <u>Billing Prohibition.</u> Physician agrees not to bill any Medicare beneficiary, the Medicare Carrier or any other insurer for Physician services to the System (Part A services), Physician services to individual patients (Part B services) or for any other services performed at the System. Physician shall comply with this billing prohibition and the terms of Federal Regulation 42 C.F.R. 405.550(d) and indemnify and hold the System harmless from any and all loss or damage arising out of the Physician's failure to comply with said billing prohibition or regulation.

## 6. TERMINATION.

6.1) <u>Termination.</u> This Agreement will terminate if any of the following events occur:

6.1.1) Upon the expiration of the term of this Agreement.

6.1.2) Upon the mutual written agreement of the parties.

6.1.3) Upon the death or disability of the Physician. Disability, and the procedures for determining disability, shall be defined in the disability insurance policy provided by the System hereunder.

6.1.4) By either party, upon the material breach or violation of the terms of this Agreement by the other party, provided the breaching party has been given written notice specifying the nature of the breach or violation and a period of thirty (30) days in which to cure such breach or violation, except that System may immediately terminate physician:

(a) Upon the revocation, suspension, or restriction of the Physician's license to practice medicine in Wisconsin;

8

_TK_ / TK    _CS_ / CS

(b) Upon cancellation of the Physician's professional liability insurance coverage for whatever reason except non-payment of premiums;

(c) Upon the revocation, suspension or restriction of the Physician's DEA registration;

(d) Upon the imposition of a suspension of more than thirty (30) days or upon revocation of the Physician's medical staff membership or clinical privileges at the System;

(e) Upon a finding by a court of law, or the Wisconsin Medical Examining Board that the Physician is guilty of fraud, dishonesty or other acts of misconduct in the rendering of professional services for the System; or,

(f) Upon the completion of an investigation coordinated by the President & CEO, during which it was determined by the President & CEO, that Physician violated any provision within Section 2; or,

(g) Upon the Physician's loss of Medicare or Medicaid certification.

## 7. RESTRICTIVE COVENANT.

7.1) Non-competition. The Physician acknowledges that the System and its other physician and non-physician employees have expended substantial time and resources to develop the Clinic and the System and their patient base in Kenosha and Racine Counties in Wisconsin and Lake County in Illinois. Physician also acknowledges that many of the patients Physician will service for the System will be the result of the System's patients being referred to the Physician by the System or by other physicians of the System.

Physician recognizes that System has significant ongoing obligations, which have been assumed based on the assumption that Physician will be providing continuing services on System's behalf. Physician also recognizes that physicians and other staff members in the Clinic have been engaged on the basis of the anticipated referrals and other work generated by Physician. Finally, Physician agrees that Physician's services on behalf of the System generate sufficient income to System for the System to pay the Physician's compensation, bonuses and fringe benefits, as well as help to cover System's overhead expenses as they relate to the Physician and the Froedtert South Medical Group.

Thus, the parties agree that if Physician left the employment of the System and competed with the System, System's obligations would continue and the loss of revenue that the Physician was generating would not be available to the System for an approximate two (2) year period for a number of reasons, e.g., recruitment of a new

9

TK  CS

physician to replace Physician, the breaking-in period for a new physician, the delay in collecting for the new Physician's services and the loss of some of the System's patients to the competing Physician.

Therefore, it is understood and agreed as follows:

7.1.1) Non-competition. During the term of this Agreement, and any subsequent renewal terms of this Agreement, and for a period of twenty-four (24) months following the termination of this Agreement, or any subsequent renewal Agreements, for any reason ("Period of Non-competition"), the Physician shall not, except as otherwise provided herein, engage in any Cardiovascular Thoracic Surgery services within a thirty (30) mile radius of any System owned, operated or leased facility where Physician practiced Cardiovascular Thoracic Surgery on a regular recurring basis during the one (1) year period prior to his separation of employment from the System.

7.1.2) Non-solicitation. In addition to the above, during the Period of Non-competition, the Physician shall not, either directly or indirectly, on his behalf or on behalf of any other person, firm or organization (other than the System) solicit or attempt to entice away from the System any patient of the System or the services of any of its employees.

7.1.3) Non-disclosure of Confidential Information. The Physician recognizes that in the performance of services at the System he will gain knowledge and information about the Clinic's and the System's patient base and referral sources, their finances, financial status, business operations and plans, contracts and arrangements with individuals, employers, other providers, health plans and payers, and their marketing and development plans and other proprietary information (collectively referred to as "Confidential Information"), the confidential nature of which is of great importance to the System and disclosure to or use of which by a competitor would result in serious damage to the System. Thus, during the Period of Non-competition, Physician shall not (unless specifically required by this Agreement or required or permitted by the System in writing) use, divulge, or disclose to any other person, firm, or organization, any Confidential Information including any information concerning the System's patients, health care service contracts, health care plans and programs, employees, patient care protocols and policies, financial data, business and operational data, charges, fees, or information pertaining to System costs, or business plans and strategy of the System acquired by the Physician in his capacity as an employee, director or officer of the System. The foregoing confidentiality obligations do not apply to (i) information which can be proven to have been publicly available through no fault of the Physician, (ii) information which can be proven to have been known by the parties prior to the date hereof, (iii) information which can be proven to have been lawfully received from an unaffiliated third party without restriction on disclosures, provided

such third party is not under an obligation of non-disclosure, or (iv) disclosure which can be demonstrated to have been compelled by law.

7.1.4) Restrictions are Reasonable. Physician understands, acknowledges and agrees that (i) the covenants and restrictions described in this Agreement shall not affect his ability to practice medicine and make a living; and (ii) the covenants contained herein, and the System's remedies provided herein, if the covenants contained in the Agreement are violated, are reasonable, necessary and appropriate to protect the System and its employees, and not a penalty.

7.1.5) Enforcement of Agreement and Waiver. In the event that the System is required to commence litigation to enforce the provisions of this Agreement, Physician shall pay the System all costs of enforcement, dispute resolution, and/or collection, including, without limitation, reasonable attorney's fees, unless the System is unsuccessful in its efforts to enforce such provisions. If the System institutes any action or proceeding to enforce the provisions hereof, the Physician hereby waives all claims or defenses that the System has an adequate remedy at law, and such Physician shall not urge in any such action or proceeding the claim or defense that such remedy at law exists.

7.1.6) Injunction. In addition to all other rights and remedies available to the System arising from or in relation to this Agreement, System shall be entitled to compel the specific performance of this covenant and all of its terms, and obtain an injunction to enforce the terms, provisions and covenants of this Agreement or to prevent their breach by Physician. This right of specific performance shall be in lieu of System seeking monetary damages from Physician. The parties further agree that System shall have the right to seek a court injunction prohibiting Physician from violating the non-competition provisions herein for a period of up to three (3) months after Physician's termination of employment, even though during said three (3) month period the parties may be negotiating regarding Physician paying to System monetary damages for violation of this covenant not to compete.

## 8. RESOLUTION OF DISPUTES.

If any controversy or dispute shall arise between or among any of the parties hereto in connection with, arising from, or with respect to this Agreement, or the rights and obligations of any party to this Agreement, then the resolution of such controversy or dispute shall be accomplished as follows:

8.1) Claims Excluded from Arbitration. In the event of a claim that Physician breached (or threatened to breach) any provision or covenant of Section 7, and/or any claim that System is entitled to any equitable remedy against Physician (including but not limited to injunctive relief), then the System shall have the right to pursue such claim and/or seek such equitable remedy by judicial process in any court of competent jurisdiction.

11

TK  CS

8.2) <u>Claims Subject to Arbitration & Arbitration Procedures</u>. Except as set forth in Section 8.1, in the event of a controversy or dispute which is not resolved by way of good-faith negotiations within ten (10) days after such controversy or dispute shall arise, then such dispute or controversy shall be submitted to the American Arbitration Association ("AAA"). Any such dispute or controversy shall be heard by a single arbitrator, and shall be governed by the AAA Employment Arbitration Rules. The arbitration locale shall be set in Kenosha, Wisconsin, and shall be processed through the AAA regional office covering Wisconsin, said AAA office currently being located at 150 N. Michigan Avenue, Suite 3050, Chicago, Illinois 60601. The award and findings of such arbitrator shall be conclusive and binding upon all parties hereto, and judgment upon such award may be entered in any court of competent jurisdiction.

8.3) <u>Attorneys' Fees.</u> The prevailing party in any arbitration or litigation to enforce any provision of this Agreement shall be entitled to recover from the other party hereto costs and expenses incurred in relation to such arbitration or litigation proceeding, including but not limited to court costs, attorneys' fees and other reasonable arbitration and/or litigation expenses.

9. **MISCELLANEOUS.**

   9.1) <u>Assignment.</u> Physician may not assign this Agreement or any rights hereunder without the prior written consent of the System. System may only assign this Agreement to a successor or subsidiary organization.

   9.2) <u>Amendment.</u> No modification, amendment or addition to this Agreement will be valid or enforceable unless in writing and signed by all parties.

   9.3) <u>Binding Agreement.</u> This Agreement is binding on all parties, their legal representatives, successors and assigns except as otherwise stated herein.

   9.4) <u>Notice.</u> All notices, demands, and other communications which may or are required to be given hereunder must be in writing and must be given either by personal delivery or by registered or certified mail and will be deemed to have been given when personally delivered or when deposited in the mail, postage prepaid, addressed to the residence of the Physician or his legal representative or to the business address of the System, as the case may be, or to such other addresses either party may designate by written notice to the other party.

   9.5) <u>Governing Law.</u> The laws of the State of Wisconsin shall govern this Agreement.

   9.6) <u>Agreement Subject to Law.</u> If any provision of this Agreement is illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, that provision shall be fully severable and this Agreement shall be construed and enforced as if the illegal, invalid, or unenforceable provision had never comprised a part of the Agreement. The remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance. Furthermore, in lieu of such illegal, invalid or unenforceable provision, this Agreement shall be reformed to include as a

12

part of this Agreement a provision as similar in terms to the illegal, invalid or unenforceable provision as may be possible and still be legal, valid or enforceable.

9.7) Captions. Section and subsection headings are not to be considered part of this Agreement, are included solely for convenience, and are not intended to be fully accurate descriptions of the content thereof. Where appropriate, words used in this Agreement in a singular shall include the plural and words used in any gender shall include all genders.

9.8) Entire Agreement. This Agreement contains the entire agreement and understanding between the parties.

9.9) Waiver. Failure to insist upon full performance of the obligation or failure to exercise rights under this Agreement shall not constitute a waiver as to future defaults or exercise of rights.

9.10) Medicare Reporting and Access Requirement. Until the expiration of four (4) years after the furnishing of the services pursuant to this Agreement, Physician shall make available, upon written request to the Secretary of the U.S. Department of Health and Social Services, or upon request to the Comptroller General, or any of their duly authorized representatives, this Agreement, and all books, documents and records of Physician that are necessary to certify the nature and extent of the costs of such services, and, if the Physician carries out any of the duties of this Agreement through a subcontract, with a value of or cost of Ten Thousand Dollars ($10,000.00) or more over a twelve (12) month period, with a related organization, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request of the Secretary or upon request to the Comptroller General, or any of their duly authorized representatives, the subcontract and books, documents and records of such organization that are necessary to verify the nature and extent of the costs of such services. (The paragraph shall be of no force or effect if not required by law.)

9.11) Counterparts. This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one (1) such counterpart.

9.12) Confidentiality of This Agreement. System and Physician agree to keep confidential the terms of this Agreement and all propriety information gained as the result of this Agreement, and to not divulge the terms or conditions under any circumstances, except to Physician accountant, legal counsel or other such advisor.

*[SIGNATURE PAGE FOLLOWS]*

13

TK / CS

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

PHYSICIAN:

By: _____
Christopher D. Stone, M.D.

SYSTEM:

By: _____
Thomas J. Kelley
Vice President and Chief Financial Officer

By: _____
Richard O. Schmidt, Jr.
President and Chief Executive Officer

14

TK / CS